# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

IN RE: )
) Chapter 13
JOSHUA J. COCHRAN )
) Bankruptcy No. 16-00760
Debtor. )
)

## RULING ON DEBTOR'S MOTION FOR ENTRY OF DISCHARGE

This matter came before the Court at a telephonic hearing. Derek Hong appeared for the Debtor, Joshua J. Cochran ("Debtor"). Carol F. Dunbar appeared as the Chapter 13 Trustee ("Trustee"). Creditor, Melissa Marvel ("Ms. Marvel") appeared pro se. The hearing addressed Debtor's Motion for Entry of Discharge and Notice of Deadline. Ms. Marvel objected to Debtor's Motion for Entry of Discharge. This is a core proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor failed to pay Ms. Marvel on or before July 1, 2015 as he had promised in resolving a state court divorce proceeding. In June 2016, Debtor filed for bankruptcy in the Northern District of Iowa. Along with his petition Debtor attached a proposed Chapter 13 repayment plan. He acknowledged that Ms. Marvel had a secured claim worth $153,000 secured by four vacant lots he co-owned with her. His Plan proposed disposing of her claim by surrendering four parcels of land securing her claim as payment in full. In his bankruptcy schedule,

Debtor listed the value of the four parcels at $153,000. Debtor and Ms. Marvel each owned one-half interest of the four lots.

On August 18, 2016, Ms. Marvel (pro se) filed her proof of claim. In her claim, Ms. Marvel asserted that the Debtor owed her $159,097.07 (the $153,000 State judgment plus interest). On the same day, Ms. Marvel commenced an adversary proceeding (Case No. 16-09032) to challenge the dischargeability of the $159.070.97 Debtor owed her. Ms. Marvel, however, did not file a separate objection to Debtor's Chapter 13 Plan. She believed the adversary case served as an objection. On October 17, 2016, the Court confirmed Debtor's Plan without objection, and without discussion of the pending adversary case.

The adversary proceeding continued on and eventually went to trial. The case was tried over two separate time periods. Ms. Marvel had to travel in from Arizona for both trial segments. The trial was interrupted so the parties could attempt to settle. After completion of the trial, the Court agreed to delay ruling so more settlement discussions could occur. The parties got very, very close to settlement. Settlement, however, ultimately was not reached.

After settlement discussions broke down, but before a decision on the merits, the Debtor withdrew his Answer to Ms. Marvel's Complaint. This Court thus entered a judgment of non-dischargeability in favor of Ms. Marvel in the amount of $120,984.07 (subtracting the value of the properties already sold under the Plan)

plus interest at the rate of 2.56% until paid in full.  Debtor then completed all the remaining payments under his Plan.

On July 22, 2019, Debtor filed a Motion for Entry of Discharge and Notice of Deadline to Object.  Debtor requested the Court to enter discharge because he had completed all payments under the confirmed Chapter 13 Plan.  On August 9, 2019, Ms. Marvel filed an Objection to Debtor's Request for Certified Entry of Discharge.  She objected because Debtor had yet to pay her on the judgment of $120,984.07 plus interest from the Court's ruling in her favor in the dischargeability proceeding.  On August 26, 2019, Debtor replied by asserting that when he executed a quit claim deed to Ms. Marvel transferring his one-half interest in the four vacant lots to her under the Plan it constituted full payment to Ms. Marvel.  The Court took the matter under advisement without further briefing.

## CONCLUSIONS OF LAW AND DISCUSSION

The question presented here is whether a confirmed plan or a Court order on dischargeability of debt entered later controls.  Ms. Marvel asserts that her claim is nondischargeable and that the Plan does not have res judicata effect on her claim or nullify the Court's dischargeability order.  In other words, she argues her failure to file a formal objection to the proposed Plan does not affect the dischargeability of the debt owed to her.  She claims the adversary on dischargeability effectively

3

served as her objection. She also notes the Court held trial and ultimately ruled in her favor.

Debtor claims that the Plan reduced Ms. Marvel's entire claim to value of the four parcels of land. He asserts that once he transferred those lots to her under the Plan, her claim was fully satisfied. Ms. Marvel responds that the Plan is not binding on her claim because the Court found the claims were for domestic support obligations that were nondischargeable under section 523(a)(5) and 523(a)(15).

The parties are essentially arguing the two legal proceedings adjudicated by this Court may be at odds with each other. The first was an uncontested Chapter 13 Plan confirmation proceeding that resulted in an order confirming the Plan. The second was the trial of an adversary claim—filed before confirmation of the Plan but adjudicated later.

Debtor now claims that the adversary, tried later, never should have proceeded. Debtor claims that his attorney made this argument to the Court before trial in the adversary. The Court has a slightly different recollection. The Court recalls noting at trial that the question raised was not about whether the case should be tried, but instead whether Debtor's Plan fully or partially resolved her claim. Rightly or wrongly, the adversary proceeded to trial. While the parties tried many times during trial to resolve the case—and thought they had at several points—ultimately an agreement could not be finalized.

4

It is important to reiterate here, that instead of proceeding to a final decision on the case tried to the Court—Debtor decided to simply withdraw his Answer after settlement attempts failed. On February 14, 2019, the Court entered a judgment finding $120,984 of the $153,000 original debt, and nearly $5,984 of interest, nondischargeable. The Court reached that number by taking $39,000 off the $159,984 of debt. The $39,000 represented the value Ms. Marvel netted on the sale of the four lots.

In requesting entry of discharge here, Debtor now argues the discharge should be entered because he fulfilled all Plan terms—including surrendering the four lots to Ms. Marvel. He points out that the Plan stated that surrendering property to Ms. Marvel was payment of her claim in full. He now argues (or re-argues) the adversary proceeding should have never proceeded and the Court's judgment in the adversary cannot be treated as having controlling legal effect.

To better understand the issues here the Court will discuss the legal effect of a plan confirmation and an adversary proceeding. Then the Court will discuss the interaction of these proceedings and what it means to this case.

1. *Confirmation and its Effect:*

Section 1327 of the Bankruptcy Code outlines when a confirmed plan is binding. 11 U.S.C. § 1327. Under section 1327, a confirmation order has res judicata effect on "any issue <u>actually litigated by the parties</u> and any issue

necessarily determined by the confirmation order." Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1688 (2015) (emphasis added). When a bankruptcy court enters an order confirming the debtor's plan, that order typically has a preclusive effect. Id. Since a confirmed plan has a preclusive effect, the terms of the plan generally are not subjected to collateral attack if the creditor has notice and an opportunity to be heard. In re Grammer, 310 B.R. 423, 426 (Bankr. E.D. Ark. 2004).

    2. *Adversary Proceeding on Dischargeability and its Effect*

To determine the dischargeability of any debt, an adversary complaint and proceeding is required. Section 523(a) of the Bankruptcy Code enumerates the different types of debts that should be excluded from a debtor's discharge. See 11 U.S.C. § 523(a). Two subsections of § 523(a) provide specific protection to the debtor's children, spouse, and Ms. Marvel as a former spouse. Section 523(a)(5) establishes that debtor's obligations of alimony, maintenance and support are nondischargeable. Similarly, 11 U.S.C. 523(a)(15) establishes any marital debt other than alimony, maintenance, or support that is incurred in connection with a divorce or separation is also nondischargeable. In essence, any material debt incurred in connection with a divorce or separation is nondischargeable. Section 523(a)(15) specifically provides:

> [a] discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any that' 'to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph [523(a)(5)] that is incurred by the debtor in the course of a

6

<u>divorce or separation or in connection with a separation agreement,</u> divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15) (emphasis added).

The general bankruptcy policy of protecting the debtor is thus not as robust when the debt arises out of a divorce or a separation agreement. In enacting subsections 523(a)(5) and (15), Congress had to "balance two public policies . . . the Bankruptcy Code's purpose of providing a fresh start to a deserving debtor; and the importance of a debtor's obligations to his family." <u>Marrama v. Citizens Bank</u>, 549 U.S. 365, 381 (2007). Congress codified this policy, which was intended "to cover divorce-related debts such as those in property settlement agreements that should not justifiably be discharged." <u>Id.</u> The legislative history demonstrates that Congress intended to protect the interest of a debtor's obligations to his family by protecting former spouses and children and "treating property settlement debts as nondischargeable." <u>In re Crosswhite</u>, 148 F.3d 879, 882 (7th Cir. 1998). As the court further noted in the <u>Crosswhite</u> case:

> [both] provisions except marital debts from discharge [. . .] and together they were intended to rectify the perceived inequity resulting in many cases decided under § 523(a)(5). Considering the congressional desire to uphold a state court's effort to effect economic justice between the parties to a marriage, bankruptcy courts must consider this clear intent

7

when making the economic determination" whether or not the debt is dischargeable.

Id. at 887.

While it is true that the Bankruptcy Code exceptions to discharge are usually "strictly construed against the objecting creditor," in domestic relations situations the "exceptions are liberally construed in favor of a former spouse." Norberg v. Norberg (In re Norberg), No. 17-7029, 2019 Bankr. LEXIS 2665, at *10 (Bankr. D.N.D. Aug. 20, 2019). The party claiming the exception to discharge nevertheless carries the burden of proof that that debt is not dischargeable. Grogan v. Garner, 498 U.S. 279, 286 (1991). The burden of proof in this proceeding is by the preponderance of the evidence. Id. As noted, a determination of dischargeability must take the form of an adversary proceeding. Fed. R. Bankr. P. 4007(e), 7006(6).

Some courts have ruled that section 523(a)(15) debt is nondischargeable under Chapter 7, but dischargeable under Chapter 13 because of section 1328. 11 U.S.C. § 1328(a); see e.g., Roest v. Roest (In re Roest), 569 B.R. 277, 283 (Bankr. W.D. Mich. 2017). Section 1328 provides that a debtor may receive a discharge upon completion of a Chapter 13 plan, it specifically provides that:

> . . . [T]he court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), **(5)**, (8), or (9) of section 523(a).

8

11 U.S.C. § 1328(a)(2) (emphasis added). The exclusion of § 523(a)(15) from the list provided in 1328(a)(2) has led some courts to believe that 523(a)(15) debts continue to be dischargeable under Chapter 13. Humphries v. Rogers (In re Humphries), 516 B.R. 856, 865 (Bankr. N.D. Miss. 2014); Dumitrache v. New (In re New), 589 B.R. 288, 292 (Bankr. N.D. Miss. 2018). This Court, however, already decided the dischargeability issue and held the debt was nondischargeable. Debtor never raised the issue of whether § 523(a)(15) debts are dischargeable in Chapter 13. The adversary order has res judicata effect between the parties. In re McKinley, No. 08-35040(1)(13), 2009 Bankr. LEXIS 1353, at *6 (Bankr. W.D. Ky. 2009). Thus, when the Debtor requested a discharge, the ruling in the adversary proceeding was binding and appears to prohibit discharge of this debt.

    3. *Interaction Between the Confirmed Plan and Dischargeability Finding*

The real question becomes which result governs here—the one suggested by the confirmed Plan or the one required by the Court's order in the adversary. As a general rule, if a creditor had notice and hearing of the plan confirmation, the creditor cannot contest the discharge of the debt as the plan treatment is binding on all its creditors. In United States Aid Funds v. Espinosa, the Supreme Court held that:

> [I]t was a legal error to confirm a Chapter 13 debtor's plan, which discharged student loan interest without finding undue hardship in an adversary proceeding, but the confirmation order was enforceable and

9

binding because the creditor, despite not receiving the required service of the order, had notice of the error but did not object or timely appeal.

130 S.Ct. 1367, 1374 (2010).

Under Espinosa, Debtor's attempt to discharge his student loan obligations without an adversary proceeding was legally in error, but the creditor was still bound by the plan because it had notice and did not timely object. Unlike the creditor in Espinosa, however, Ms. Marvel did not simply allow the Plan to be confirmed and come in after the fact to raise dischargeability concerns. She filed her adversary on dischargeability long before the Plan confirmation. She clearly believed the adversary she filed preserved her rights and served to object to the Plan.

Under the Federal Rules of Bankruptcy Procedure, the confirmation process cannot invalidate a creditor's rights in property. Under Rule 7001(6), the dischargeability of a debt can only occur "through litigation in an adversary proceeding – and not through a provision in a plan." See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230, 232 (3d Cir. 2008); see Fed. R. Bankr. P. 7001(6).

The dischargeability of a debt held by a specific creditor is "a matter of particularly great consequence, in terms of the applicable legal principles and the practical result," as such creditor must be afforded the right to defend her rights in an adversary proceeding. Mansaray-Ruffin, 530 F.3d at 232. The purpose of

10

having an adversary proceeding is to provide "greater procedural protection [to the creditor], requiring a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion." Id. The Federal Rules of Bankruptcy Procedure "establish less exacting requirements for the confirmation of a bankruptcy plan, a process which entails virtually none of the procedural safeguards of an adversary proceedings." Id.

The meaning and spirirt of this rule is particularily applicable to this case. The prevailing practice in this judicial district is to get Chapter 13 plans confirmed, if at all possible, and to deal with issues that might later effect the Plan at the time they arise. This is true for issues that may arise with claim disputes (or potential disputes), issues relating to possible or likely changes in debtor's disposable income, and other matters that can be handled after confirmation. This practice of getting a Plan confirmed and moving forward was certainly intended to apply here—in the context of a confirmation proceeding where a dischargeability adversary had already been filed. The Court's assumption was that the normal process would apply—and in fact was applied here. The less formal confirmation proceeding resulted in a confirmed plan, which treated the claim, subject to the adversary proceeding to follow. Debtor's counsel never suggested the pending adversary was resolved at the time of confirmation. The Court would not have approved the Plan if Debtor's counsel had brought up the issue.

The Third Circuit in Mansaray-Ruffin concluded that in similar circumstances "a confirmed plan has no preclusive effect on issues that must be raised in an adversary proceeding, if no such proceeding has been brought." Id. at 237.[1] That reasoning applies with full force here.

In addition to this reasoning, there are several additional problems with Debtor's arguments that the adversary proceeding and resulting order was barred by res judicata. First, and probably foremost, the problem for Debtor is that he eventually withdrew his Answer. The Answer is **the way** of contesting the adversary—including the assertion of his defense that the Plan was binding and has res judicata or preclusive effect. In other words, Debtor's withdrawal of his Answer was a withdrawal of his defense on the issue. The issue of res judicata or preclusive effect of confirmation was thus really never properly before the Court. Second, Debtor and his counsel were aware that the dischargeability adversary was

---

[1] The Bankruptcy Court for the Eastern District of Pennsylvania wrote in a footnote that it could be argued Mansaray-Ruffin was overruled in part by the Supreme Court's decision in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010), at least insofar as Mansaray-Ruffin suggested that the failure to employ the adversary proceeding procedures, when applicable, constitute a per se due process violation. In Thomas v. City of Phila. (In re Thomas), 497 B.R. 188, 206 n.33 (Bankr. E.D. Pa. 2013). "However, the more fundamental principle articulated in Mansaray-Ruffin—that a confirmation order entered without due process is unenforceable—was not questioned in Espinosa and remains good law." Id. For the purposes of this case, Mansaray-Ruffin thus remains good law.

pending at the time of the Plan confirmation.  As noted above, Debtor never addressed that fact.  Debtor and his counsel knew Ms. Marvel, acting pro se, was specifically and plainly asserting her right to have the claim preserved in the adversary.  They knew Ms. Marvel was not agreeing that the Plan's treatment resolved the issue.  While a pro se party is not entitled to special treatment from the Court, the Court also will not allow technical processes to catch and penalize her—especially here where she clearly made her intent known that she was not acquiescing in the proposed Plan treatment.

Third, even if the Court accepted some of Debtor's arguments here, and looked to the Plan as potentially binding, the Plan itself contains a pretty significant error in math.  Debtor either did not catch the error or improperly attempted to mislead the creditors and the Court.  Debtor now argues that when he deeded the four parcels of property to Ms. Marvel under the Plan, it was in full satisfaction of the $153,000 debt.  It is undisputed, however, that Ms. Marvel held a 50 percent interest in those four lots.  Debtor—at most—thus transferred only his 50% interest to Ms. Marvel.  That interest—even using Debtor's own numbers—was worth $76,500 (1/2 of the $153,000).  Even if the Plan and those numbers in it were binding, he would still owe Ms. Marvel half of $153,000.  In short, the Plan provision attempting to offer the real estate collateral in full satisfaction of the debt, when at most its value would be for one-half of the debt—is in fact nowhere

13

near a fair, full-value transfer.  The order in the adversary gave credit to Debtor for the transfer of his one-half interest in the parcels.  The Court used $39,000 for the value of the lots.  That was the amount Ms. Marvel showed at trial.

In the Ruling and judgment in adversary, the Court, in fact, accounted for property transferred under the Plan.  Debtor requested entry of discharge in an amount of $159,999—plus—representing the original $153,000 debt and interest.  The Court instead ordered only $120,000 as the non-dischargeable judgment.  The $39,000 reduction represents the value of the Debtor's half interest in the real estate conveyed to Ms. Marvel under the Plan.  The Court chose that amount based on the proof offered at trial by Ms. Marvel on what the real estate actually sold for.

Additionally, Ms. Marvel also arguably had an unsecured priority claim after confirmation.  See Section 507(a)(1).  Section 1322(a)(2), provides that all claims entitled to priority under section 507, must be paid in full, in deferred cash payments unless the parties agree to have an out of court agreement.  No such payment was made.

Here, Debtor argues that nothing else matters because the Plan was confirmed without any objection from Ms. Marvel, and that she effectively consented to, or impliedly assented to the Plan.  Debtor argues Ms. Marvel is bound by the provisions of the Plan under any scenario.  Ms. Marvel concedes that she did not object to the Plan at confirmation, but she did file a proof of claim

14

within the statutory allocated period, in addition to have already filed an adversary proceeding specifically noting what treatment she sought.

The Court concludes that, notwithstanding the fact that the Debtor's Plan was confirmed by the Court in the normal process, Ms. Marvel's rights were not cut off by confirmation. The issue of dischargeability is an issue that needs to be determined by an adversary proceeding, which is exactly what Ms. Marvel did. Therefore, the Debtor's Plan did not affect or discharge Ms. Marvel's claim.

Moreover, even if Debtor had some legitimate argument that confirmation was binding and had a preclusive effect in and against the adversary—he has waived and abandoned that argument. He withdrew his Answer and thus is deemed to have not contested the adversary or provided **any** defense to it. In any case, the adversary judgment was entered without challenge or appeal. It is thus the binding leading order here. Debtor's debt to Ms. Marvel, which the Court, in fact, adjusted for the property value she received under the Plan, remains a valid, final, binding order.

## CONCLUSION

This Court denies the Debtor's Motion for Entry of Discharge to the extent a discharge effects the debt remaining to Ms. Marvel. Debtor is to pay Ms. Marvel the total amount of $120,984.07 plus all the accrued interest at the rate of 2.56%

until paid in full or arrange for an out-of-court agreement. Debtor's Motion is hereby DENIED.

Judgment shall enter in favor of Melissa Marvel and against Joshua J. Cochran in the amount of $120,984.07 plus all the accrued interest at the rate of 2.56%.

**SO ORDERED.**

Dated and Entered:

January 31, 2020

_____
Thad J. Collins
Chief Bankruptcy Judge